IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AMOS "CEDRIC" BENNING, JR., et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **LTYC ARTS CORE, INC., et al.**, <br><br> Defendants. | Case No.: 1:25-cv-03373-ABA |

**DEFENDANT BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS'**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Baltimore City Board of School Commissioners, which operates a system of public schools in Baltimore City, also known as the Baltimore City Public School System of Baltimore City Public Schools (hereinafter "City Schools" "BCBSC," or "Defendant"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Local Rule 105.1, hereby submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs'[1] Complaint and claims asserted against BCBSC.

**I.   INTRODUCTION.**

Plaintiffs' wage claims against BCBSC never get out of the gate. As a state instrumentality, BCBSC is immune from a suit on their FLSA (Counts I and II) and Maryland (Counts III, IV, V) wage claims. Plaintiffs' reliance on Md. Code Ann., Cts. & Jud. Proc. § 5-518 is misplaced, and they plead no facts that could trigger any waiver under Md. Code Ann., State Gov't § 12-201. Separately, the Complaint also does not plausibly allege joint employment between the LTYC

---

[1] Plaintiffs relevant to this Motion are Amos "Cedric" Benning, Jr., Jermaine Melvin, Marcus Mason, Dwayne Miles, Christopher Goodman, and Asim Amin (collectively, "Plaintiffs"), as Plaintiffs Valerie Hall-Butler and Camrie Hilton assert claims only against the LTYC Defendants. (*See* Compl., Counts I-VI.)  Count VI is not brought against BCBSC.

1

Defendants (defined below) and BCBSC under the framework outlined in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017). Indeed, Plaintiff admits that the LTYC Defendants hired them, set their pay, collected and processed hours, maintained personnel records, and managed payroll, and BCBSC did not. (*See* Compl. ¶¶ 26-49, 55-60, 61, 63.)  The allegations against BCBSC amount to ordinary site logistics and safety procedures (adherence to school calendars, sign-in procedures, building and school rules), as well as legally mandated background checks for school system contractors, none of which constitute employer control. (*See id.* ¶¶ 55-61.)

Accordingly, Plaintiffs' claims against BCBSC should be dismissed in their entirety with prejudice.

## II.  STATEMENT OF FACTS[2]

BCBSC contracted with one or more of the LTYC Defendants to secure and provide arts programming to public schools in its system. (Compl. ¶¶ 53-55.)  Plaintiffs are eight individuals who worked as instructors, in some capacity, for LTYC (defined below) assigned to one or more of Defendant's public schools during the 2024-2025 academic year, which began in August 2024 and extended through June 2025. (*Id.* ¶¶ 1-2, 67, 106, 152, 196, 256, 306, 354, 404.)  Plaintiffs allege that they did not receive timely and/or full payment for work performed at City Schools sites between December 2024 and June 2025. (*Id.* ¶¶ 84-105, 125-51, 175-95, 204-54, 257-305, 307-53, 355-403, 405-53). Plaintiffs assert virtually the same claims for unpaid wages under the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"), and Maryland common law, for breach of contract. (*Id.* ¶¶ 1-2, Counts I-VI.)

---

[2]     As it must at this stage, BCBSC accepts all well-pled allegations as true for purposes of the Motion to Dismiss only. BCBSC reserves the right to dispute these facts in all future proceedings.

2

Plaintiffs raise claims against several corporate entities and their owner—LTYC Arts Core, Inc., LTYC, Inc., LTYC Arts, LLC, and Dermell Brunson ("Dr. Brunson") (collectively, "LTYC" or "LTYC Defendants")—as well as BCBSC. (*Id.* ¶¶ 6-13, 25, 50.) Plaintiffs contend that despite the various corporate forms and entities, the LTYC Defendants operated as a single, joint enterprise for purposes of wage liability. (*See id.* ¶¶ 6-19.) Plaintiffs further contend that LTYC and BCBSC were also joint employers, such that BCBSC should also be liable for any wage violations under the FLSA and Maryland statutory law. (*See id.* ¶¶ 50-64, 420, 423, 426, 430, 432, 436.) Notably, however, Plaintiffs assert their common law breach of contract claims *only* against the LTYC Defendants and admit that they had a written or implied agreement *only* with the LTYC Defendants, not BCBSC. (*See id.* ¶¶ 438-40.)

A.      **Plaintiff's Dealings with LTYC and BCBSC.**

According to Plaintiffs, LTYC operates "like a staffing agency" for school, summer, and after-school programs that contracts with schools and school systems, like City Schools. (*See id.* ¶¶ 12, 53.) Plaintiffs claim that Dr. Brunson managed and controlled all affairs for LTYC, including as to employee work arrangements, like payroll, onboarding, and making contractual arrangements with staff and clients. (*See id.* ¶¶ 12, 26-49.) To that end, Plaintiffs admit that LTYC hired them, issued and was party to their "employment contracts," established policies for payroll submission, and maintained wage and employment records for Plaintiffs. (*Id.* ¶¶ 14-17, 29-33, 41-48, 69, 108, 154, 198.) Plaintiffs confirm that they submitted records of hours worked *only* to LTYC and entered into "contracts" *only* with the LTYC. (*Id.* ¶¶ 69, 82, 108, 123, 154, 172, 198, 210, 240, 255, 270, 289, 328, 337, 357, 373, 385.)

Conversely, Plaintiffs also confirm that BCBSC did *not* hire or pay them and did *not* otherwise manage any of their administrative or personnel matters, like payroll, taxes, onboarding

3

(other than a background check), and any related disputes—Plaintiffs allege that Dr. Brunson controlled all of those aspects. (*See id.* ¶¶ 26-49, 55-60, 61, 63.) Indeed, Plaintiffs admit that, based on their understanding, BCBSC first learned about the specific details of the pay disputes that Plaintiffs now raise in or around August 2025, at the beginning of the *2025-2026* school year. (*Id.* ¶ 63.) Plaintiffs' allegations confirm they did not maintain regular communication about employment issues, like pay, with anyone working for BCBSC. (*See generally id.*)

Plaintiffs nonetheless contend that BCBSC controlled certain workplace conditions at the schools where Plaintiffs worked. (*Id.* ¶¶ 53-62.) In total, Plaintiffs assert that BCBSC:

- set their daily and weekly work schedules through school administrators;
- required them to follow school calendars for holidays, closures, and half days;
- expected them to comply with school rules, policies, and other procedures, including as to student discipline, lessons, grading, and reporting;
- required them to sign in and out at school buildings;
- conducted background checks on Plaintiffs;
- possibly maintained certain administrative files, like sign-in/sign-out records relating to Plaintiffs; and
- had the ability to refuse workers placed by "the LTYC Defendants."[3]

(*See id.* ¶¶ 55-61.)

Although Plaintiffs highlight the requirement to sign in and out of City Schools buildings, Plaintiffs do not contend that they experienced any repercussions or effects of any kind from City Schools related to these protocols. (*See id.* ¶¶ 80-105, 121-151, 208-237, 253-267.) Plaintiffs also confirm that BCBSC set their schedules only insofar as creating and setting times for a particular class, activity, or substitute teaching need, which they then were supported with assistance from

---

[3] However, none of the Plaintiffs allege that BCBSC *actually* refused to place them or that it took any adverse acts against them at any point relevant to this lawsuit. (*See generally id.*)

LTYC Defendants. (*See id.* ¶¶ 30-33, 53, 55-56, 58, 69, 74-75, 108, 114-15, 154, 161-166, 198, 204-06, 240, 246-49, 270, 280-83, 326, 328-329, 334-35, 373, 378-79.) Plaintiffs further admit that LTYC set schedules entirely unconnected to BCBSC, as LTYC required Plaintiffs to regularly work or attend team meetings on the weekends when public schools are closed. (*See id.* ¶¶ 169, 207, 252, 286, 340-41, 382.)

      **B.**      **Plaintiffs' Claims Against LTYC and BCBSC.**

Plaintiffs assert virtually the same kind of wage claims against each of the Defendants under the FLSA, MWHL, and MWPCL, but they assert a claim for breach of contract only against the LTYC Defendants. (*See id.* ¶¶ 1-2, Counts I to VI.) Plaintiffs assert jurisdiction in this Court based on 28 U.S.C. § 1331 and original jurisdiction over their FLSA claims, and supplemental jurisdiction under 28 U.S.C. § 1367(a) for the remainder of their MWHL, MWPCL, and breach of contract claims. (*Id.* ¶¶ 3-4.) Plaintiffs also represent that they raise claims "for unpaid wages and damages of less than $400,000.00," such that BCBSC allegedly cannot rely on the defense of sovereign immunity under the Eleventh Amendment, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-518(c). (*Id.* ¶¶ 65-66.)

**III.**      **STANDARD OF REVIEW**

      **A.**      **Legal Standard on a Rule 12(b)(6) Motion to Dismiss.**

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "[T]he tenet that a court must accept as true all of the

5

allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679 (cleaned up). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (cleaned up). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (cleaned up).

In reviewing the sufficiency of the allegations concerning BCBSC's joint employer status, the Court should not accept as true "a legal conclusion couched as a factual allegation, conclusory allegations devoid of any reference to actual events, or allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Qwest Communs. Corp. v. Md.-National Capital Park & Planning Comm'n*, 598 F. Supp. 2d 704, 706 (D. Md. 2009). Nor should the Court accept "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

### B.     Legal Standard on a Rule 12(b)(1) Motion to Dismiss.

"Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to challenge the court's subject matter jurisdiction with respect to the plaintiff's suit." *Adeyemi v. Dep't of Pub. Safety & Corr. Servs.*, No. ELH-19-3207, 2021 U.S. Dist. LEXIS 86168, at *7 (D. Md. May 5, 2021). "Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Id.* However, a court should dismiss for

lack of subject matter jurisdiction under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (cleaned up).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed either as "a facial challenge or a factual challenge." *Id.* (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Challenges to jurisdiction under the doctrine of sovereign immunity "raises a facial challenged to the Court's subject matter jurisdiction." *Id.* In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Id.*

## IV. ARGUMENT

### A. BCBSC is Immune from Liability under the Eleventh Amendment as to All of Plaintiffs' Wage Claims.

Plaintiffs assert claims for unpaid wages against BCBSC relying on the theory that it acted as Plaintiffs' joint employer along with the LTYC Defendants. Maryland, however, has not waived protection of sovereign immunity afforded by the Eleventh Amendment as to claims for unpaid wages under the FLSA, the MWHL, *and* the MWPCL, such that BCBSC is immune from any liability, and Plaintiffs' claims against BCBSC should be dismissed on that basis.

"Eleventh Amendment immunity protects unwilling states from suit in federal court."[4] *Gilliland v. Bd. of Educ. of Charles Cty.*, 526 F. App'x 243, 245 (4th Cir. 2013) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). "This immunity also protects 'state agents and state instrumentalities,' and Maryland school boards fit into that category." *Id.* (cleaned up) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425

---

[4] "The Eleventh Amendment to the United States Constitution provides: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Gilliland*, 526 F. App'x at 245 (4th Cir. 2013).

7

(1997); *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012)). However, "legislatures are authorized to enact statutory waivers of Eleventh Amendment immunity that apply to state agencies." *Id.* at 246 (citing *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999)).

To constitute a valid Eleventh Amendment immunity waiver, a statute must waive the immunity "by the most express language or by such overwhelming implications from the text of the statute as will leave no room for any other reasonable construction." *Id.* (cleaned up) (citing *Edelman*, 415 U.S. at 673). Reviewing Maryland's "express language" concerning such waiver, as found in Md. Code Ann., State Gov't § 12-201 (concerning waiver for contract claims) and Md. Code Ann., Cts. & Jud. Proc. § 5-518 (concerning, *inter alia*, waiver as to "any claim of $400,000 or less," but at the time "$100,000 or less"), the Fourth Circuit concluded that "§ 5-518, as the Maryland courts have construed it, does not apply to Plaintiffs' FLSA claim." *Gilliland*, 526 F. App'x at 250; *see also Johnson v. Md. Transit Admin.*, No. CCB-18-3768, 2019 U.S. Dist. LEXIS 122025, at *5 (D. Md. July 19, 2019) ("As a result, the court concludes that the State of Maryland has not waived the MTA's sovereign immunity for the FLSA claims presented here, and that such claims therefore should be dismissed."); *Forte v. Bd. of Educ.*, No. WMN-14-1490, 2014 U.S. Dist. LEXIS 168041, at *13 (D. Md. Dec. 4, 2014) ("[T]he Fourth Circuit declined to extend the immunity waiver of [§ 5-518] because a Fair Labor Standards Act Claim, regardless of the underlying facts, was contractual in form, rather than tort or quasi-tort as covered by [§ 5-518]."). Indeed, the "decisions of the Maryland appellate courts make clear" that "[§ 5-518] applies only to tort claims, such as personal injury actions, and tort-related claims, such as discrimination actions." *Id.* at 249. Unlike tort claims, FLSA and Maryland wage claims "are contractual in their nature." *Id.* (citing *Roland Elec. Co. v. Black*, 163 F.2d 417 (4th Cir. 1947)). Contract claims,

8

however, are covered by Md. Code Ann., State Gov't § 12-201, which waives sovereign immunity to the extent "that an official or employee executed" the relevant agreement supporting the claim. *Id.* at 246 (citing Md. Code Ann., State Gov't § 12-201(a)). Moreover, neither the MWHL nor the MWPCL include Maryland state government, agents, or instrumentalities within the definition of "employer," such that there is no waiver of immunity as to Maryland wage claims, either. *See* Md. Code Ann., Lab. & Empl. §§ 3-401, 3-501; *Newell v. Runnels*, 407 Md. 578, 605, 967 A.2d 729, 744 (2009) ("[T]he State did not cede its sovereign immunity from the FLSA claim and was not defined as an 'employer' for liability purposes under the MWHL.").

Here, Plaintiffs raise wage claims under the FLSA, the MWHL, and/or the MWPCL, and rely on § 5-518 to assert waiver of BCBSC's sovereign immunity. (*See* Compl. ¶¶ 65-66, Counts I-V.) Plaintiffs also assert claims for breach of contract, but *only* against the LTYC Defendants. (*See id.*, at Count VI.) Plaintiffs, thus, do not assert waiver under § 12-201 as they admit that they did not have an agreement with BCBSC signed by "an official or employee" of the school system. (*See generally id.*; Md. Code Ann., State Gov't § 12-201(a).) In fact, Plaintiffs expressly allege that they entered into agreements *only* with the LTYC Defendants, without signature or agreement from anyone at BCBSC.[5] (*See* Compl. ¶¶ 438-41.) Given that it is a "state agent" or "instrumentalit[y]," BCBSC also did not waive sovereign immunity as to FLSA claims under § 5-518. *See Gilliland*, 526 F. App'x at 245, 250; *Johnson*, 2019 U.S. Dist. LEXIS 122025, at *5; *Forte*, 2014 U.S. Dist. LEXIS 168041, at *13. Maryland also did not include State instrumentalities, like BCBSC, within the definition of "employer" under the MWHL or the MWPCL, such that Plaintiffs also cannot maintain any claims against BCBSC under those laws, either.

---

[5] LTYC also confirmed this in its Motion to Dismiss, filed on December 8, 2025, which presented the specific contracts referenced by Plaintiffs. (*See* ECF No. 16-1, at 2 (citing Exhibits 2 to 11).)

Accordingly, as § 5-518 does not apply to Plaintiffs' FLSA, MWHL, or MWPCL claims, and Plaintiffs have not invoked § 12-201, nor should they now have an opportunity to invoke it after confirming they signed contracts *only* with LTYC, the Court should dismiss Plaintiffs' FLSA, MWHL, and MWPCL claims (Counts I through V) against BCBSC, *with prejudice*, based on the sovereign immunity protections afforded by the Eleventh Amendment.

**B.    Plaintiffs Nonetheless Failed to Allege a Joint Employment Relationship Between BCBSC and the LTYC Defendants to Support Wage Liability.**

As outlined above, Plaintiffs cannot raise FLSA, MWHL, or MWPCL claims against BCBSC as it is immune under the Eleventh Amendment. That said, even if Eleventh Amendment immunity somehow did not apply, BCBSC is still entitled to dismissal of all asserted wage claims under federal and state law as Plaintiffs failed to plausibly allege that BCBSC was their joint employer.

"The FLSA conditions liability on the existence of an employer-employee relationship." *Joyce v. Absolute Consulting*, No. RDB-19-0868, 2020 U.S. Dist. LEXIS 265820, at *3-4 (D. Md. Jan. 24, 2020). "An entity 'employs' an individual if it 'suffers or permits' the individual to work." *Id.* (quoting 29 U.S.C. § 203(g)). In *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017), "the Fourth Circuit developed a six-factor test to be used when analyzing whether an alleged employer is a 'joint employer' for purposes of the FLSA." *Id.* at *4. Specifically, the *Salinas* Court directed the courts to focus on:

1. Whether the entities jointly determine, share, or allocate the power to direct or supervise the worker;
2. Whether they jointly determine, share, or allocate the power to hire, fire, or modify employment terms;
3. The degree of permanence and duration of the relationship between them;
4. Whether one entity controls or is under common ownership/control with the other;

10

      5.      Whether work is performed on premises owned or controlled by either entity; and

      6.      Whether the entities jointly determine or share responsibilities typically carried out by an employer (payroll, workers' compensation, taxes, tools, etc.).

*See* 848 F.3d at 141-42. Maryland courts apply functionally the same standard and factors for purposes of Maryland state wage law liability, relying on the familiar "economic reality" test. *See Newell*, 407 Md. at 649-54.

Although rigid application of the factors "is not appropriate at this early stage," they "provide a useful framework for determining whether the Plaintiff[s have] sufficiently alleged the existence of a joint employment relationship." *Joyce*, 2020 U.S. Dist. LEXIS 265820, at *5-6. "At this stage, Plaintiffs may sufficiently allege a joint employment relationship by making specific allegations about how the joint employers controlled their workers' job duties and shared responsibility for employment decisions among themselves." *Id.* at *6. Courts, however, require some factual allegations showing that the alleged joint employer "had at least some power to control and supervise workers and to hire, fire, or modify conditions of employment" as to Plaintiffs. *Lora v. Ledo Pizza Sys.*, No. DKC 16-4002, 2017 U.S. Dist. LEXIS 118474, at *16 (D. Md. July 27, 2017).

Applying these standards, the Complaint fails to allege facts showing that BCBSC exercised any of the hallmarks of employer control. Plaintiffs do not allege that BCBSC hired or fired any of them. Instead, each Plaintiff affirmatively pleads executing a "contract" with LTYC, not BCBSC, and that LTYC hired them, onboarded them, and handled their personnel matters. (*See* Compl. ¶¶ 14-17, 29-33, 41-48, 69, 82, 108, 123, 154, 172, 198, 210, 240, 255, 270, 289, 328, 337, 357, 373, 385.)  The Complaint likewise alleges that LTYC set all pay rates, collected information on hours worked, calculated pay, instructed Plaintiffs on how to complete timekeeping

11

spreadsheets, and either delayed or failed to pay wages. (*See id.* ¶¶ 26-49, 55-60, 63.) No Plaintiff alleges that BCBSC issued wages, processed payroll, or controlled the method or rate of pay. (*See generally id.*)

Plaintiffs also do not allege that BCBSC supervised or controlled meaningful terms of their alleged employment. Rather, Plaintiffs claim only that BCBSC determined when instructional programs would be taught, which determined when Plaintiffs were expected to perform services, and that BCBSC enforced the school calendar as it relates to their work, including for holidays and closures. (*See id.* ¶¶ 55-61.) Plaintiffs do not assert that BCBSC evaluated their performance, supervised their instruction or program, directed or issued discipline, or required any employment reporting. Plaintiffs also do not allege that BCBSC maintained personnel files, payroll records, or any timekeeping records. Plaintiffs uniformly plead that LTYC required them to submit spreadsheets with hours and tasks, received those spreadsheets monthly, and used them to issue (or fail to issue) pay.[6] (*See id.* ¶¶ 14-17, 29-33, 41-48, 69, 80-83, 108, 121-24, 171-74, 200-03, 337-49, 356-57, 382.)

Plaintiffs do allege that BCBSC asked them to sign in and out of their school building, but they do not allege that those records related, or were used to determine, pay, time, or anything else related to employment, or that the sign-in sheets were even exchanged between BCBSC and the LTYC Defendants. (*See id.* ¶¶ 80-105, 121-51, 208-37, 253-67.)

Ordinary and routine access procedures (and records of such access) are critical building-wide safety protocols that do not establish supervision or control over employment conditions. *See Salinas*, 848 F.3d at 142 n.10 ("For example, a general contractor that sets the start and end times

---

[6]   In its Motion to Dismiss, LTYC further confirmed this point by demonstrating that LTYC required Plaintiffs, by contract, to provide their own "equipment, tools, and instrumentalities" to perform services for BCBSC. (*See* ECF No. 16-1, at 16.)

for all work on a jobsite or establishes site-wide safety protocols may not be a joint employer absent additional evidence of the general contractor's codetermination of the essential terms and conditions of the workers' employment."); *cf. Aguilar v. David E. Harvey Builders, Inc.*, No. GLS-18-03953, 2023 U.S. Dist. LEXIS 194674, at *60 (D. Md. Oct. 31, 2023) (defendant "acting as a 'typical' general contractor in a 'typical' construction project involving a general contractor and one of its subcontractors" not basis of joint liability, but requires "the combined influence of [the two alleged employers] over the essential terms and conditions of the Plaintiffs' activities"); *Gil v. Pizzarotti, LLC*, No. 1:19-cv-03497-MKV, 2021 U.S. Dist. LEXIS 59668, at *30 (S.D.N.Y. Mar. 29, 2021) ("[C]ourts distinguish between 'circumstances where the putative joint employer maintains specific standards to which its contractors and the contractors' employees must adhere, and regularly monitors the contractor's employees to ensure that their performance satisfies the putative joint employer's expectations,' which alone does not establish control of work conditions, and 'circumstances where the putative joint employer is responsible for the day-to-day management of the contractor's employees.'"); *Elsayed v. Family Fare LLC*, No. 1:18-cv-1045, 2020 U.S. Dist. LEXIS 142546, at *27-28 (M.D.N.C. Aug. 10, 2020) ("[A]bility to access a franchisee's employment records does not indicate the existence of a joint employment relationship. Likewise, a franchisor may, consistent with its maintenance of uniform brand standards, require its franchisees to use its payroll systems without suggesting a joint-employment relationship.").

Plaintiffs' allegations concerning BCBSC conducting background checks likewise do not demonstrate the necessary control or supervision over their employment by BCBSC, particularly because the school system is *required* to conduct appropriate background checks for contractors with direct, unsupervised, and uncontrolled access to minors, like Plaintiffs. *See Jacobson v.*

13

*Comcast Corp.*, 740 F. Supp. 2d 683, 692 (D. Md. 2010) (no evidence "to indicate that the maintenance" of "(1) arrival and departure data for each cable technician, (2) lists of cable technicians and their employment status, reasons underlying any terminations, and information on the vehicles they drive, and (3) drug testing and criminal background information on all cable technicians," by the putative joint employer was "used to control a technician's day to day employment, or that Comcast retain[ed] records for any purpose beyond quality control.").

Specifically, Section 5-551 of the Family Law Article of the Maryland Code provides that public, private, and nonpublic schools "shall require employees and employers to obtain a criminal history records check." Md. Code Ann., Fam. Law § 5-551(a)(6), (7). Section 5-550 then clarifies that, among other categories, "employee" includes "a contractor or subcontractor who will have direct, unsupervised, and uncontrolled access to children in a facility identified in" Section 5-551. Md. Code Ann., Fam. Law § 5-550(g)(2)(ii). Section 6-113 of the Education Article further provides that county boards, like BCBSC, cannot "knowingly hire *or retain* any individual who has been convicted of" certain sexual and/or violent crimes, and extend the same requirements on any "contractor or subcontractor," prohibiting them from "knowingly assign[ing] an employee to work on school premises with direct, unsupervised, and uncontrolled access to children, if the employee has been convicted of [any enumerated] crime." Md. Code Ann., Educ. § 6-113. (emphasis added). Section 6-113.2 then imposes additional background check requirements for school system employees and contractors targeted toward prevention of abuse and sexual misconduct. *See* Md. Code Ann., Educ. § 6-113.2. Actions performed pursuant to legal mandate ensuring school safety are not evidence of an employment relationship, as Maryland law compelled BCBSC to conduct necessary background checks on employees, contractors, or even *volunteers* before allowing any of them to engage in direct, unsupervised, and uncontrolled

14

activities with City Schools' children, irrespective of any business or work relationship with BCBSC or others. *Cf. Jacobson*, 740 F. Supp. 2d at 692 ("It is only good business sense for Comcast to attempt to insure that technicians are fit to enter customer's homes." (cleaned up)). In short, implementation of a mandated background check does not equate to employment status.

Accordingly, as Plaintiffs plead no facts tying BCBSC to hiring, firing, wages, calculating or maintaining payroll, recordkeeping, or any kind of substantive supervision over their work (apart from setting the program schedule). As such, even if not immune under the Eleventh Amendment, Plaintiffs' wage claims against BCBSC should be dismissed because each of them fails to provide facts showing *meaningful* or *routine* control, supervision, and/or modification of employment conditions as to plausibly show that BCBSC was a joint employer together with any of the LTYC Defendants. Indeed, LTYC is an admitted contractor for BCBSC that provided discrete services to the school system, and Plaintiffs effectively contend that BCBSC determined when programs or other instruction would occur, and it then required Plaintiffs to adhere to baseline policies and procedures when providing services. Plaintiffs allege nothing more than routine building-level logistics, including adherence to critical safety protocols, as expected for provision of contracted services to a State instrumentality, particularly those involving direct access to minor children at public school system. Moreover, the LTYC Defendants have also now directly disclaimed any joint employment relationship with BCBSC, and themselves noted how they and BCBSC have no overlap in control, functions, or decisions concerning employment and personnel. (*See* ECF No. 16-1, at 4, 14-16.)

Accordingly, Plaintiffs have failed to plead a joint employment relationship and their claims against BCBSC should be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to BCBSC because BCBSC is immune from liability on Plaintiffs' FLSA, MWHL, and/or MWPCL claims. Even if immunity somehow did not apply, all of the Plaintiffs also failed to plead enough facts to allege a joint employment relationship with BCBSC. Accordingly, the Court should dismiss the Complaint as to BCBSC in its entirety.

Dated: December 10, 2025

Respectfully submitted,

/s/
Kathleen A. McGinley (Bar No. 29150)
Maxim V. Doroshenko (Bar No. 20776)
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland 21209
(410) 415-2000 – Telephone
(410) 415-2001 – Facsimile
Kathleen.McGinley@jacksonlewis.com
Maxim.Doroshenko@jacksonlewis.com

*Counsel for Defendant Baltimore City Board of School Commissioners*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on December 10, 2025, he caused a true and correct copy of the foregoing Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint was filed through the ECF system and was sent to all registered participants.

/s/
Maxim V. Doroshenko

4924-1057-8303, v. 7